# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**EDWARD F. ANHALT,**

          Plaintiff,

          **Case No. 04-C-1052**

-vs-

**CARDINAL STRITCH UNIVERSITY,**

          Defendant.

## DECISION AND ORDER

The *pro se* plaintiff, Dr. Edward Anhalt ("Anhalt"), was an adjunct business professor for the Cardinal Stritch University ("CSU") College of Business ("COB") from 1985 until he was terminated in December 2002. Dr. Anhalt alleges that he was terminated because of his age (56) in violation of the Age Discrimination in Employment Act ("ADEA").

CSU moved for summary judgment. CSU's motion complied with Civil L.R. 56.1 (Summary Judgment Motions in Pro Se Litigation); that is, the motion included "a short and plain statement that any factual assertion in the movant's affidavit(s) or other admissible documentary evidence will be accepted by the Court as true unless the party unrepresented by counsel submits the party's own affidavit(s) or other admissible documentary evidence contradicting the factual assertion." Civil L.R. 56.1(a)(1). The motion also included the text to Fed. R. Civ. P. 56(e) and (f), Civil L.R. 56.1, Civil L.R. 56.2, and Civil L.R. 7.1. Dr. Anhalt filed a responsive brief and included a copy of his

personnel file, a list of faculty and staff over the age of 40 that allegedly were terminated by CSU, a list of the courses he taught at CSU, CSU's answers to his interrogatories, and 35 "End of Course Surveys from 11/96 to 9/02."

Dr. Anhalt's response fails to create any genuine issues of material fact. First, as Dr. Anhalt was warned, materials in opposition to a motion for summary judgment must include a "*specific response* to the movant's proposed findings of fact, clearly delineating only those findings to which it is asserted that a genuine issue of material fact exists. The response must refer to the contested finding by paragraph number and must include *specific citations* to evidentiary materials in the record which support the claim that a dispute exits." Civil L.R. 56.2(b)(1) (emphasis added). As for any additional factual assertions, Dr. Anhalt was required to present "[f]actual propositions . . . set out in *numbered paragraphs*, with the contents of each paragraph limited as far as practicable to a single factual proposition." Civil L.R. 56.2(b)(2); 56.2(a)(2) (emphasis added). Dr. Anhalt failed to comply with either of these rules. Despite Dr. Anhalt's *pro se* status, the Court is not obliged to sort through Dr. Anhalt's evidence to determine what is disputed and what is not.

Most important, Dr. Anhalt's evidence is improper in its form. An adverse party "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, *by affidavits or as otherwise provided in this rule*, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e)(emphasis added). The documents provided by Dr. Anhalt are unauthenticated, by

-2-

Case 2:04-cv-01052-RTR    Filed 12/12/06    Page 2 of 10    Document 44

way of either affidavit or declaration under penalty of perjury, and inadmissable. Although *pro se* plaintiffs are entitled to more lenient standards, there is no lower standard when it comes to complying with procedural rules. *See Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994). All relevant facts that are denied without supporting documentation must be accepted as true. *See Schulz v. Serfilco, Ltd.*, 965 F.2d 516, 518-19 (7th Cir. 1992).

Therefore, CSU's proposed findings of fact are undisputed, and are accepted as true for purposes of this motion. *See Runnels v. Armstrong World Industries, Inc.*, 105 F. Supp. 2d 914, 918 (C.D. Ill. 2000) ("because plaintiff has submitted no facts or evidence to contradict [the defendant's] version of events, [defendant's] facts are undisputed for purposes of this motion"). For the reasons that follow, CSU's motion for summary judgment is granted.

## BACKGROUND

CSU is an institution of higher education that was founded in Milwaukee, Wisconsin, in 1937 by the Catholic Order of the Sisters of St. Francis of Assisi. CSU has four colleges: the College of Arts and Sciences, the College of Business ("COB"), the College of Education, and the Ruth S. Coleman College of Nursing. The COB provides high-quality, practical education that leads to undergraduate and master's degrees. All COB programs are accelerated with classes meeting one night a week in convenient locations for working adults. The COB is designed to educate adults and is separate from the traditional undergraduate daytime business programs, which are part of the College of Arts and Sciences.

The teaching philosophy of the COB is to use academically qualified instructors who teach by night what they do professionally during the day. The great majority of instructors in the COB are Adjunct Faculty who are hired on an as-needed basis and are not considered part of the faculty ranks. Adjunct Faculty members have other employment, ideally in the areas in which they teach, and teach a course in the COB in their spare time. It has never been the teaching philosophy of the COB to have its Adjunct Faculty view their teaching assignments at the COB as their main job or source of income. CSU has never treated the COB Adjunct Faculty as part of its regular Faculty and they are not tenure eligible.

Dr. Anhalt began teaching at the COB in 1985. According to Dr. Anhalt's "Faculty Vita," he received a Bachelors of Science Degree from the University of Wisconsin in June 1967, with majors in History and Philosophy. In June 1971, he received a Masters of Science Degree in Education from the University of Wisconsin-Milwaukee. He received a doctoral degree in Education (Ed. D.) from Rutgers University in June 1978, and completed post-doctorate courses at Lehigh University in 1978 and 1979.

In 2002, Dr. Anhalt was at Salary Level III for COB's Adjunct Faculty, which is the highest of the three salary levels for Adjunct Faculty. The basic Level III salary was $208.00 for each COB course or module taught. In 2002, CSU paid Dr. Anhalt a total of $33,461.06 for his teaching services.

The person at the COB who was primarily responsible for the scheduling and assignment of Adjunct Faculty was Joan Kramer ("Ms. Kramer"). In 2002, Ms. Kramer's title was Director of Research and Faculty Services. Ms. Kramer had fallen into the habit

of allowing Adjunct Faculty to self-select the classes or modules they wished to teach. Ms. Kramer also did not adequately monitor whether the Adjunct Faculty had the proven academic and professional qualifications to teach the classes that he or she had selected to teach. Because Dr. Anhalt's Masters and Doctorate degrees were in Education, Dr. Anhalt did not have any advanced degrees in the business related courses that he was teaching at the COB.

In the spring of 2002, CSU hired Dr. Gary Ross ("Dr. Ross") to be the new Dean of the COB. Dr. Ross reported to Dr. Marna E. Boyle ("Dr. Boyle"), CSU's Vice President for Academic Affairs. The deans of CSU's four colleges report to Dr. Boyle on all academic matters. In 2002, CSU was preparing for its institutional accreditation visit, which included review of the four colleges. Dr. Boyle charged Dr. Ross with the primary responsibility to prepare the COB for the accreditation process.

Dr. Boyle told Dr. Ross that an important aspect of the accreditation process for the University was to ensure that Adjunct Faculty were teaching in areas and courses in which they have demonstrated academic and professional credentials. With regard to professional credentials, this meant that the Adjunct Faculty member was teaching in areas that he or she had actual working experience, ideally in areas in which he or she was currently working or had recently worked in the case of retired instructors. As for academic credentials, 18 graduate level credits in the subject matter that he or she was teaching was the standard. This was the number of credits that the Higher Learning Commission of the North Central Association ("HLD/NCA") required for teaching general education courses. Eighteen graduate credits is considered "substantial study" and was used by CSU as a benchmark for establishing the expertise of Faculty. This

criteria is used in order to ensure the high quality and integrity of its teaching at the University and is consistent with the accreditation standards that are expected of a university.

In preparation for the accreditation process, Dr. Ross identified Dr. Anhalt as a COB Adjunct Faculty member who clearly did not have the credentials for the courses he was teaching since all of his degrees were in education. In addition, Dr. Anhalt was not a working professional in the areas he was teaching for the COB. Dr. Boyle and Dr. Ross discussed the fact that the COB needed to stop using Dr. Anhalt's services because of his lack of academic and professional credentials. Dr. Boyle agreed that this was the correct decision. Dr. Anhalt admits that he does not have 18 graduate credits in the subject matters taught at the COB.

In September 2002, Dr. Ross directed Dr. Al Klingerberg, Assistant Dean of the COB, to inform Dr. Anhalt of the decision. Dr. Klingerberg gave the assignment to Ms. Kramer, who informed Dr. Anhalt that starting in October 2002 he would not be assigned to any more COB classes. Dr. Ross also put an end to Ms. Kramer's practice of allowing COB Adjunct Faculty to self-designate the classes they wanted to teach.[1] Because Ms. Kramer's practice of allowing Adjunct Faculty to self-select their classes had jeopardized CSU's accreditation, CSU eventually terminated her employment on October 30, 2003.

In the fall of 2002, prior to his termination as an adjunct teacher for the COB, Dr. Anhalt was asked to teach two undergraduate marketing courses at CSU's College of Arts and Sciences, its traditional semester-based college. Professor Barbara Fischer ("Ms.

---

[1] At the time the COB made the decision to stop utilizing Dr. Anhalt's services, he had already indicated to Ms. Kramer that he was interested in teaching a series of courses for which he lacked the credentials to teach, including "Capstone: Business Policy and Strategy," "Human Relations and Organizational Behavior," and "Sociology of Work."

Fischer"), Department Chair of the Business and Economics Department at CSU's College of Arts and Sciences, was a friend of Dr. Anhalt, and asked him to teach two classes because of a recent emergency and because she knew of his availability during the daytime.

In 2002, CSU had a contract with Follett Bokstores ("Follett") that gave Follett the exclusive right to operate CSU's student bookstore. As part of CSU's contract with Follett, all undergraduate books must be ordered through and purchased at the CSU bookstore. The one exception to the contract was for the teaching materials used in the COB. Because Dr. Anhalt had never taught outside the COB, he was apparently unaware of CSU's exclusive contract with Follett. Instead of ordering the books from the CSU bookstore for the two courses that Ms. Fischer asked him to teach, Dr. Anhalt used the process as a lesson in marketing. Dr. Anhalt had the students order their books through him as a lesson in the difference between wholesale and retail pricing.

Sometime in September 2002, Karen Walrath ("Ms. Walrath"), CSU's Vice President of Finance, learned that Dr. Anhalt was not using the CSU student bookstore to order books for his classes. She learned this because some students asked the Financial Aid Office to have some of their financial aid money made payable in checks to Dr. Anhalt to pay for the books they were buying through him. Ms. Walrath ordered Ms. Fischer to put a stop to Dr. Anhalt's book-ordering exercise. Later, Ms. Walrath learned that Dr. Anhalt had not discontinued this practice as more students were asking for checks from Financial Aid. Because she feared that Dr. Anhalt's actions were in breach of their contract with Follett, Ms. Walrath ordered Ms. Fischer never to use Dr. Anhalt's services

Case 2:04-cv-01052-RTR   Filed 12/12/06   Page 7 of 10   Document 44

-7-

again as a teacher for traditional Arts and Sciences classes. Since the two marketing courses had already started, Dr. Anhalt was allowed to complete them in December 2002.

Ms. Walrath made this decision independently from Dr. Ross' and Dr. Boyle's decision not to use Dr. Anhalt's services in the COB. Neither decision was made on the basis of Dr. Anhalt's age. Ms. Walrath had no idea how old Dr. Anhalt was at the time she made her decision.

## ANALYSIS

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Dr. Anhalt makes a series of arguments in response to CSU's motion for summary judgment. Dr. Anhalt's bare allegations and arguments in his brief cannot create a genuine issue of material fact. As noted above, CSU's proposed findings of fact are *undisputed* for purposes of this motion. Even if the Court was inclined to consider the evidence and unsubstantiated arguments submitted by Dr. Anhalt, they do nothing to contradict the material facts that (1) age was not a factor in CSU's decision to terminate Dr. Anhalt's employment, and (2) CSU had legitimate, non-pretextual reasons for terminating Dr. Anhalt.

For instance, Dr. Anhalt argues that he states a claim because he was replaced by younger adjunct faculty members. However, an employer does not violate the ADEA merely by discharging an employee whose age falls within the protected category and replacing him with a younger worker. *See LaMontagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1413 (7th Cir. 1984). "Because younger people often succeed to the jobs of older people for perfectly legitimate reasons, the mere fact that an older employee is replaced by a younger one does not permit an inference that the replacement was motivated by 'age discrimination.'" *Monaco v. Fuddruckers, Inc.*, 1 F.3d 658, 661 (7th Cir. 1993) (quoting *LaMontagne* at 1413). Therefore, even if Dr. Anhalt had appropriate documentary evidence to support this argument, it fails as a matter of law.

In sum, CSU's proposed findings of fact establish that age was not a factor in the decision to discontinue the use of Dr. Anhalt's teaching services. They also establish that CSU had legitimate, non-pretextual reasons for terminating Dr. Anhalt: his lack of qualifications to teach the business classes he had been teaching, and his failure to order books through Follett's bookstore. *See, e.g., Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004) ("Pretext is more than a mistake on the part of the employer; it is a phony excuse"); *Little v. Illinois Dep't of Revenue*, 369 F.3d 1007, 1012 (7th Cir. 2004) (pretext is shown if "the ostensible reason for the employment decision is really a lie contrived to mask unlawful discrimination").[2] Furthermore, CSU's review of the qualifications of its adjunct faculty and determination that Dr. Anhalt was not qualified to

---

[2] Dr. Anhalt argues that Ms. Fischer liked the idea of textbook ordering, but the undisputed evidence demonstrates that Ms. Walrath made the decision to discontinue using Dr. Anhalt because of the Follett's contract, not Ms. Fischer.

teach business classes demonstrates that Dr. Anhalt cannot establish a *prima facie* case of discrimination. *See Zaccagnini v. Charles Levy Circulating Co.*, 338 F.3d 672, 674 (7th Cir. 2003) (part of *prima facie* case is requirement that plaintiff must be qualified for the job).

Finally, Dr. Anhalt argues that CSU's motion should be denied because of a variety of alleged discovery abuses. Dr. Anhalt made the same argument in his May 25, 2006 Motion to Extend Discovery Period. His argument is rejected for the same reasons stated in the Court's October 27, 2006 Decision and Order denying Dr. Anhalt's motion for an extension.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. CSU's motion for summary judgment [Docket No. 31] is **GRANTED**; and

2. This matter is **DISMISSED** in its entirety.

Dated at Milwaukee, Wisconsin, this 12th day of December, 2006.

**SO ORDERED,**

s/ Rudolph T. Randa

_____
**HON. RUDOLPH T. RANDA
Chief Judge**